**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TERRI MAHAR,

                              Plaintiff,

            - v -                                           Civ. No. 1:15-CV-841
                                                                 (DNH/DJS)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

**APPEARANCES:**

LAW OFFICES OF STEVEN R. DOLSON
*Attorney for Plaintiff*
126 North Salina Street, Suite 3B
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION
*Attorney for Defendant*
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**OF COUNSEL:**

STEVEN R. DOLSON, ESQ.

PRASHANT TAMASKAR, ESQ.

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

In this action, Plaintiff Terri Mahar moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB"), Period of Disability ("POD"), and Supplemental Security Income ("SSI").[1] Based upon the following discussion, it is recommended that the Commissioner's decision denying Social Security benefits be **affirmed**.

---

[1] This case has proceeded in accordance with General Order 18, which set forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 12, Pl.'s Br., & 17, Def.'s Br.

## I. BACKGROUND

The Court adopts the brief facts set forth in Plaintiff's Brief under the heading "STATEMENT OF FACTS," as supplemented by the Defendant in her Brief under the heading, "STATEMENT OF FACTS," with the exception of any legal arguments contained therein. Dkt. No. 12, Pl.'s Br., at pp.1-2; *but see* Dkt. No. 17, Def.'s Br., at p. 1 (adopting statement of facts set forth by the Administrative Law Judge ("ALJ") in his written opinion).

Mahar, born on November 16, 1970, filed applications for DIB, POD, and SSI on August 14, 2012, claiming an inability to work as of June 1, 2012, due to a variety of ailments, including osteoarthritis, migraines, tremors, learning disability, and roscea. Dkt. No. 10, Admin. Transcript [hereinafter "Tr."] at pp. 113-21, 122-28, 132-33, & 135-44. Later, at the Hearing before an Administrative Law Judge ("ALJ"), Mahar adjusted the alleged onset disability date to August 12, 2012. *Id*. at p. 33. Mahar graduated highschool and has not completed any type of specialized job training, trade, or vocational school. *Id*. at p. 137. Her past work includes newspaper delivery person. *Id*. at pp. 116 & 124.

Mahar's disability applications were denied on initial review. *Id*. at pp. 57 & 58. On February 10, 2014, a Hearing was held before ALJ Robert Wright wherein testimony was procured from Mahar, who was accompanied by counsel. *Id*. at pp. 30-50. On April 10, 2014, ALJ Wright issued an unfavorable decision finding that Mahar was not disabled. *Id*. at pp. 10-29. On May 29, 2015, the Appeals Council declined to review the ALJ decision, concluding that there was no basis under the Social Security Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner. *Id*. at pp. 1-6. Having exhausted all of her options for review through the Social Security Administration's tribunals, Plaintiff now brings

this appeal.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla" of evidence scattered throughout the administrative record; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *see also Williams ex. rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an [Administrative Law Judge's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex. rel. Williams v. Bowen*, 859 F.2d at 258.

The Administrative Law Judge ("ALJ") must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d at 258; 42 U.S.C. § 405(g). However, where the weight of the evidence does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were

applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

## B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. §§ 404.1520 & 416.920. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. §§ 404.1520(b) & 416.920(b). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at §§ 404.1520(c) & 416.920(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id*. at §§ 404.1520(d) & 416.920(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an

impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id*. If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity ("RFC")[2] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. §§ 404.1520(e) & 416.920(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. §§ 404.1520(f) & 416.920(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id*.; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. §§ 404.1520(f) & 416.920(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Wright's Findings

As noted above, Mahar was the only witness to testify at the Hearing. Tr. at pp. 30-50. In

---

[2] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a) & 416.945(a).

addition to such testimony, the ALJ had Mahar's medical records consisting of treatment reports and opinions from various treating and/or consulting physicians. *Id.* at pp. 51-56 & 180-391.

ALJ Wright noted initially that, for DIB purposes, Mahar met the insured status requirements of the Social Security Act through December 31, 2016.[3] *Id*. at p. 13. Using the five-step disability evaluation, ALJ Wright found that: (1) Mahar had not engaged in any substantial gainful activity since August 12, 2012, the amended alleged onset disability date; (2) she has severe medically determinable impairments, namely mild osteoarthritis of the knees and hips, fibromyalgia, migraines, and mild learning disability, but her gastric impairments, tremors, and rosacea are not considered to be severe; (3) her severe impairments do not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4; (4) she retains the RFC to perform the full range of light work with certain limitations, such as she would be limited to unskilled work with certain environmental restrictions, and, as such, she could not return to any of her prior work; but, (5) considering her age, education, work experience, and the RFC, and using the Medical-Vocational Guidelines as a framework, Mahar could perform work available in the national economy and was therefore not disabled. *Id.* at pp. 15-24.

### D. Plaintiff's Contentions

Plaintiff's argument on appeal is centered mainly around the weight the ALJ afforded to the opinions rendered by James Storey, M.D., Plaintiff's treating neurologist. *See generally* Pl.'s Br. It is Mahar's contention that the ALJ violated the Treating Physician Rule when he improperly

---

[3] In order for an individual to qualify for DIB, Mahar's disability must have commenced at a time when she met the insured status requirements as provided by the Social Security Act. 42 U.S.C. §§ 423(a)(1)(A) & (c)(1); 20 C.F.R. §§ 404.130 & 404.315(a). For an individual to be eligible for SSI, she must meet the income and resource requirements of the Social Security Act. 42 U.S.C. §§ 1382a & 1382b. Furthermore, SSI benefits are not payable for any month before the month in which the application for such benefits is filed. 20 C.F.R. § 416.335.

discounted or ignored portions of Dr. Storey's opinion. *Id*. at pp. 4-5.

Under the Regulations, a treating physician's opinion as to the nature and severity of a claimant's impairment is entitled to "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999).[4] The treating physician doctrine recognizes that a claimant's treating sources, who in most cases are medical professionals, are more apt to "provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings" as opposed to an evaluation of a one-time non-examining, non-treating physician. 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

In analyzing a treating physician's opinion, "the ALJ cannot arbitrarily substitute his [or her] own judgment for competent medical opinion." *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). Furthermore, when weighing all medical opinions and assessing what weight to accord, "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof" are considerations. *Schisler v. Sullivan*, 3 F.3d at 568; 20 C.F.R. §§ 404.1527(d)(1)-(6) & 416.927(d)(1)-(6); *see also Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998). In the event the ALJ does not give controlling weight to the treating physician, he must specifically state the reasons for doing

---

[4] A "treating physician" is the claimant's "own physician, osteopath or psychologist (including outpatient clinic and health maintenance organization) who has provided the individual with medical treatment or evaluation, and who has or had an ongoing treatment and physician-patient relationship with the individual." *Jones v. Apfel*, 66 F. Supp. 2d 518, 524-25 (S.D.N.Y. 1999) (quoting *Schisler v. Bowen*, 851 F.2d 43, 46 (2d Cir. 1988)).

so. 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2).

Plaintiff has received treatment for her headaches with Dr. Storey since approximately June 2000, and in 2003, began treatment for complaints of tremors. Tr. at pp. 244-45 & 249-50. Her visits ranged from annually to every three-to-six months. *Id*. at pp. 216-54 & 332-44. On February 22, 2014, Dr. Storey filled out a Residual Functional Capacity Questionnaire regarding Plaintiff's migraines and tremors. *Id*. at pp. 373-75. Therein, Dr. Storey opined that Plaintiff's headaches were moderate, occurring every other week, lasting four days in duration. *Id*. at p. 373. The symptoms associated with her headaches include vertigo, malaise, photosensitivity, visual disturbances, and mental confusion/inability to concentrate. *Id*. He also indicated that weather changes tend to trigger Mahar's headaches and that bright lights make the condition worse. *Id*. at p. 374. Mahar was not assessed to have any "significant limitations" with reaching, handling, or fingering. *Id*. Dr. Storey opined that Mahar's symptoms occasionally interfere with her attention and concentration, which according to the definitions set forth on that form, equates to 6% to 33% of an eight-hour workday. *Id*. at pp. 373 & 375. When asked "[o]n average how many days per month . . . [would Plaintiff] be absent from work as a result of his/her impairments or treatments[?]" Dr. Storey responded, "unknown." *Id*. at p. 375.

In reviewing the ALJ's written decision, I note that there are several instances wherein ALJ Wright specifically discusses Dr. Storey's treatment notes and opinions. Initially, in assessing the severity of Plaintiff's impairments at Step Two of the sequential disability evaluation, ALJ Wright acknowledged that Dr. Storey has treated Plaintiff for complaints of, *inter alia*, migraine/headaches and tremors. Upon reviewing the medical record, the ALJ determined that the former condition was severe, but the latter was not. Tr. at p. 16. In support of the finding that the tremors were not severe,

the ALJ cites to Dr. Storey's treatment notes and the fact that Dr. Storey opined that Mahar had no limitations with regard to reaching, handling, or fingering. *Id*. In this respect, in finding Plaintiff's tremors to be not severe, the ALJ afforded great weight to Dr. Storey's opinion. *Id*. at pp. 16-17.

Next, in assessing at Step Three whether Plaintiff's impairments met or medically equaled the severity of the listed impairments, and more specifically in assessing the severity of Plaintiff's mental impairments, the ALJ considered Dr. Storey's treatment notes with regard to Plaintiff's social functioning. The ALJ noted that Mahar had mild difficulties in this category, and that such assessment is consistent with Dr. Storey's treatment notes. *Id*. at p. 17. With regard to the category of concentration, persistence or pace, the ALJ determined that Mahar had moderate difficulties. *Id*. at p. 18. Notwithstanding Plaintiff's contentions regarding worsening difficulties with attention and memory, the ALJ relied upon Dr. Storey's treatment notes which consistently referenced intact attention and memory. *Id*. Although intelligence testing and observation during a consultive neurological examination revealed "some borderline deficits in spatial tasks and low average to average functioning in other areas[,]" it was recommended that Plaintiff could utilize certain tools to aide some activities, such as the use of planners, calendars, timers, and a GPS system in a car. *Id*.

In assessing Plaintiff's RFC, the ALJ also took into consideration Dr. Storey's treatment notes and clinical testing results. *Id*. at pp. 22-23. Specifically, the ALJ noted that while Plaintiff has complained of migraines/headaches, memory deficits, and decreased attention, "treatment notes under Dr. Storey have consistently referenced intact memory and concentration with normal mental status evaluation upon clinical testing dating to 2000." *Id*. at p. 22 (citing Tr. at pp. 216-54 & 332-44). Although Plaintiff has reported subjective complaints of memory loss, testing conducted in

2010 and 2014, such as an electroencephalogram and MRI of the brain, were normal. *Id*. (citing Tr. at pp. 252-54 & 332). And, as noted by the ALJ, prior to the alleged onset disability date, Plaintiff reported to Dr. Storey that her headaches were under control on the medication. *Id*. Notably, treatment records reflect that during the period at issue, Plaintiff consistently reported that while she was taking her medication, her migraines were under control. *Id*. at pp. 216-19, 220-23, & 333-36. The ALJ took note of the fact that having never observed Plaintiff during a migraine episode, Dr. Storey has had no occasion to corroborate any of Plaintiff's subjective complaints, such as allegations of blurred vision. *Id*. Upon reviewing the medical record, and the reports from various professionals, most notably from Suzanne Dickson, Ph.D., whom Plaintiff met with for a consultive neuropsychological evaluation, the ALJ concluded that Dr. Dickson's findings and the findings of the State agency medical consultant were mutually consistent and supported by mental status evaluations performed by Dr. Storey. *Id*. at pp. 22-23. Accordingly, these assessments were given great weight. *Id*. at p. 23. However, the ALJ attributed little weight to Dr. Storey's assessment that Mahar's headaches and associated pain would interfere "occasionally" with her ability to attend to and concentrate on simple work tasks, because such findings is "based exclusively on the claimant's subjective reports," without corroboration, and because such finding contradicts Dr. Storey's treatment notes which "consistently reference intact attention and memory." *Id*.

Upon reviewing the ALJ decision and the Administrative Record, the Court does not agree with Plaintiff's arguments that the ALJ ignored any evidence or that he misapplied the Treating Physician Rule. Indeed, it is clear that the ALJ considered all the evidence before him in rendering his disability determination. It is of no moment that the ALJ found certain assessments rendered by Dr. Storey to be well supported and deserving of great weight while at the same time discounting

other aspects of his opinion that are not well supported, are contradicted by his own treatment notes and testing results, and/or were based upon the Plaintiff's subjective complaints. This is especially true where, as here, the ALJ has determined Plaintiff's subjective allegations regarding the intensity, persistence and limiting effects of her symptoms were not entirely credible, a finding which Plaintiff does not challenge. *Id*. at p. 19.

Indeed, it is clear that ALJ Wright utlized Dr. Storey's opinions, treatment notes, and clinical test findings at each step of the disability evaluation. In light of the above, I find that as to the discreet arguments raised by Plaintiff on appeal, the ALJ did not commit any legal errors and his findings are supported by substantial evidence in the record. As such, it is hereby

**RECOMMENDED**, that the Commissioner's decision denying disability benefits be **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: August 16, 2016
Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge